UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Court File No. 14-cr-331 (PJS/LIB) (1)

      Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Christopher Harrison Headbird,

      Defendant.

---

This matter came before the undersigned United States Magistrate Judge upon Defendant Christopher Harrison Headbird's ("Defendant") Motion to Suppress All Electronic Surveillance Evidence, [Docket No. 17], Motion to Suppress Search and Seizure Evidence, [Docket No. 18], and Motion to Suppress Statements of Defendant, [Docket No. 19]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on December 8, 2014, regarding Defendant's pretrial motions.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress All Electronic Surveillance Evidence, [Docket No. 17], Motion to Suppress Search and Seizure Evidence, [Docket No. 18], and Motion to Suppress Statements of Defendant, [Docket No. 19], be **DENIED**.

I. **BACKGROUND AND STATEMENT OF FACTS**

    **A. Background**

Defendant is charged with one count of being an armed career criminal in possession of a firearm, in violation 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment, [Docket No. 8]).

B. Facts[1]

During the late evening hours of August 19, 2014, Officer Marlin Van Loon of the Leech Lake Police Department was notified by dispatch that N.C., Defendant's mother, had called to report being threatened by Defendant. Officer Van Loon was aware that, at that time, there was at least one outstanding warrant for Defendant's arrest.

Officer Van Loon called and spoke to N.C. During the conversation, N.C. told Officer Van Loon that Defendant was at her residence, had a gun, had threatened her, and had temporarily prevented her from leaving the residence. N.C. also told Officer Van Loon that she wanted Defendant out of her house and conveyed to Officer Van Loon that the police could use any means necessary to remove Defendant.

After the conversation, Officer Van Loon went to N.C.'s house. At some point other officers from the Leech Lake Police Department, the Cass County Sheriff's Department, and at least one other law enforcement agency arrived on the scene. Officer Van Loon then went to find N.C., who had by that time gone to a different nearby residence.

Once Officer Van Loon made contact with N.C., he asked her to sign a form indicating that she had given her consent for law enforcement officers to enter and search her residence. Officer Van Loon did not make any promises to N.C. in order to get her to sign the form, nor did he threaten or intimidate her. N.C. signed the form. During his encounter with N.C., Officer Van Loon noted that N.C. appeared shaken but otherwise coherent and intelligent. Officer Van Loon also noted that N.C. did not appear to be under the influence of any intoxicants. After N.C. signed the consent form, Officer Van Loon returned to the residence, which had by then been surrounded by law enforcement. Officer Van Loon does not recall when N.C. signed the form,

---

[1] Except where otherwise expressly noted, the facts are derived from the testimony of Officer Marlin Van Loom of the Leech Lake Tribal Police Department and Deputy Sheriff Lowell Scott Thompson of the Cass County Sheriff's Department at the December 8, 2014, motions hearing.

but knows that he arrived back at the residence with the signed form before the officers ultimately entered the house during the early morning hours of August 20, 2014.

At some point, the law enforcement officers on the scene made contact with Defendant by using the cell phone of one of Defendant's acquaintances who had arrived on the scene. Sgt. Bryan Welk of the Cass County Sheriff's Department spoke to Defendant via the cell phone. Using a hand held digital audio recorder, Sgt. Welk was able to record some of the conversations he had with Defendant. During those conversations, Sgt. Welk learned that Defendant was still in the house, was armed, and was making threats regarding an at-that-time unidentified female who was with him in the house. Sgt. Welk conveyed this information to other officers on the scene.

The standoff continued past 3:30 a.m. on August 20, 2014. While the standoff continued, Cass County Sheriff's Deputy Ryan Fisher applied for a warrant to enter and search the house. Deputy Fisher's affidavit in support of the application for the search warrant contained N.C.'s statements that Defendant was inside the residence, had struck N.C., and threatened her with a gun. (Govt.'s Ex. 2 at 3). The affidavit also indicated that Defendant, who had a previous felony conviction, was still inside the residence and was making threats against a female also still inside the residence. (Id.). Minnesota State District Court Judge David Harrington issued the search warrant during the early morning hours of August 20, 2014. Sometime thereafter, the officers entered the house. Defendant eventually surrendered and was arrested and taken into custody.

Upon being taken into custody, Defendant was booked and initially detained at the Cass County Detention Center. Defendant made and received calls while there that he now seeks to suppress. The Cass County Detention Center allows detainees to make phone calls by obtaining and using phone cards. On the face of the phone cards that the Center provides is a printed notice to detainees that their calls may be recorded. The Cass County Detention Center also informs

detainees during the initial booking process that the calls of detainees may be recorded. Further, an automated audio message plays before each call a detainee makes from the Center that states that the call may be recorded.

Defendant was later moved to the Crow Wing Correctional Facility. Defendant also made and received phone calls while there that he now seeks to suppress. Detainees at the Crow Wing Correctional Facility may similarly make calls by obtaining and using phone cards. The phone cards provided by the Crow Wing Correctional Facility also have printed notices on their faces that inform detainees that their calls may be recorded. However, unlike the Cass County Detention Center, the Crow Wing Correctional Facility does not provide an automated audio message before each call that repeats the notice.

Defendant was subsequently indicted with a charge of being an armed career criminal in possession of a firearm. (Indictment, [Docket No. 8]). Defendant then filed the present motions to suppress.

## II. DEFENDANT'S MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE, [DOCKET NO. 17]

Defendant moves the Court to suppress all electronic surveillance recordings of his telephonic conversations with Sgt. Welk on August 19 and 20, 2014, and the calls that Defendant made and received while at the Cass County Detention Center and the Crow Wing Correctional Facility. Defendant contends that the recordings must be suppressed as unlawfully intercepted and disclosed pursuant to 18 U.S.C. §§ 2518(10)(a)[2], 2515, and 2703, arguing he did not give any authorization for the calls to be recorded.

---

[2] In Defendant's brief in support of his motion, Defendant cites to 18 U.S.C. § 518(10)(a). As 18 U.S.C. § 518 does not exist and Defendant's brief indicates that he is seeking to suppress the recording on the basis that they were unlawfully intercepted, which is addressed in 18 U.S.C. § 2518(10)(a), the Court considers the citation in Defendant's brief to be a typographical error made in an intended reference to 18 U.S.C. § 2518(10)(a).

4

**A.     Standard of Review**

In pertinent part, 18 U.S.C. § 2515 prohibits the use at trial of unlawfully intercepted electronic oral communications and evidence derived therefrom. Pursuant to 18 U.S.C. § 2518(10)(a), an aggrieved person may move to suppress the contents of an intercepted oral communication, along with evidence derived therefrom, on the bases that **"the communication was unlawfully intercepted . . . the order of authorization or approval under which it was intercepted is insufficient on its face . . .[or] the interception was not made in conformity with the order of authorization or approval."**

**B.     Analysis.**

1. <u>Recordings made during the standoff.</u>

Defendant first moves the Court to suppress the recordings Sgt. Welk made of the telephone conversations that he had with Defendant during the standoff.  The only authority Defendant cites in support of his motion to suppress is 18 U.S.C. §§ 2518(10)(a), 2515, and 2703, which by their text prohibit the *unlawful* interception and disclosure of oral electronic communications. (Emphasis added).  It is not unlawful, however, for a person acting under color of law, like Sgt. Welk, to intercept an oral electronic communication, if the person is a party to the communication sought to be suppressed. 18 U.S.C. § 2511(c).  As Sgt. Welk was a party to the conversations on the recordings that Defendant seeks to suppress, it was not unlawful for him to record those conversations. Accordingly, Defendant is not entitled to have the recordings of those conversations suppressed pursuant to 18 U.S.C. §§ 2518(10)(a), 2515, and 2703.  In addition, Defendant has not asserted any other basis for suppressing the recordings.

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress All Electronic Surveillance Evidence, [Docket No. 17], to the extent the motion

pertains to the recordings of the telephone conversations between Defendant and Sgt. Welk made during the stand-off on August 19 and 20, 2014.

    2. <u>Recordings of Defendant's jail telephone calls.</u>

Defendant next moves the Court to suppress any recordings of the telephone calls he made and received while he was detained at the Cass County Detention Center and the Crow Wing County Correctional Facility. Again, the only authority Defendant cites in support of his motion to suppress is 18 U.S.C. §§ 2518(10)(a), 2515, and 2703, which by their text prohibit the <u>unlawful</u> interception and disclosure of oral electronic communications. In pertinent part, 18 U.S.C. § 2511(c), sets forth that it is <u>not</u> unlawful for a person acting under color of law to intercept an oral electronic communication if one party to the conversation gives prior consent to the recording. The Eighth Circuit has explained:

> Consent may be express or implied, but in either case, there must be actual consent. When someone voluntarily participates in a telephone conversation knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception.

<u>United States v. Corona-Chavez</u>, 328 F.3d 974, 978 (8th Cir. 2003).

Courts of this circuit have found that a prisoner implicitly consented to having his phone conversations recorded when the prisoner participated in a phone conversation after having been given notice via a prison handbook and orientation session that calls might be recorded. <u>United States v. Horr</u>, 963 F.2d 1124, 1126 (8th Cir. 1992). Courts have also found notice sufficient to imply the prisoner's consent where the prisoner was informed of a call recording policy by handbook and signs placed above the prison phones. <u>United States v. Morin</u>, 437 F.3d 777, 780 (8th Cir. 2006). In the present case, the Cass County Detention Center provided notice to Defendant during the booking process, on the phone cards used to make the calls, and in a recorded audio message before each call, that his calls could be recorded. In light of such notice,

6

the Court concludes that, by participating in the phone calls while detained at the Cass County Detention Center, Defendant implicitly consented to the calls being recorded.

In addition, the Court concludes that the notice printed on the Crow Wing County Correctional Facility phone cards that the Defendant had to use to make calls also put Defendant on notice that his calls while there could be recorded and that he implicitly consented to the recording of his calls when he participated in phone conversations after having received that notice.

Because Defendant implicitly consented to the recording of his phone calls while at the Cass County Detention Center and at the Crow Wing Correctional Facility, the recording of the calls was not unlawful under 18 U.S.C. §§ 2518(10)(a), 2515, and 2703. Accordingly, Defendant is not entitled to have those recordings suppressed.

Based on the foregoing, the Court also recommends **DENYING** Defendant's Motion to Suppress All Electronic Surveillance Evidence, [Docket No. 17], to the extent the motion pertains to the recordings of the telephone conversations Defendant participated in while detained at the Cass County Detention Center and at the Crow Wing Correctional Facility.

### III. DEFENDANT'S MOTION TO SUPPRESS SEARCH AND SEIZURE EVIDENCE, [DOCKET NO. 18]

Defendant moves the Court to suppress all evidence obtained during and as a result of: 1) the entry into N.C.'s residence following the standoff on August 19 and 20, 2014, the resulting search of the residence, and seizure of Defendant; and, 2) the seizure and search of Defendant's person and automobile on June 8, 2014. Although Defendant frames his motion as one which seeks to suppress evidence gathered as a result of both the listed searches and seizures, Defendant argues only that the listed searches were unlawful.

1.  <u>Entry and Search of N.C.'s residence.</u>

As an initial matter, the Court notes that there was no indication in either the testimony or exhibits submitted at the motion hearing that Defendant lived at N.C.'s residence. Without some indication that Defendant had a sufficient privacy interest in the residence, Defendant would not have standing to assert the present motion to suppress. <u>See</u> <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969) (holding that Fourth Amendment rights are personal and may not be asserted vicariously). Other evidence in the record, however, does indicate that Defendant lived in N.C.'s residence.[3] Assuming for the sake of argument that Defendant did have a sufficient interest in N.C.'s residence to assert Fourth Amendment rights there, the Court addresses the merits of the Defendant's motion to suppress.

The Government argues that the entry and ensuing search of N.C.'s residence did not violate Defendant's Fourth Amendment rights because N.C. gave her consent for the officers to enter and search the residence, the officers had also obtained a warrant to enter and search the residence, and, in any event, exigent circumstances justified the entry.

It is undisputed that N.C. lived at the residence and had given her consent for the officers to enter and search therein. However, under the circumstances of the present case, whether N.C. gave the officers consent to enter the residence is rendered moot by the fact that the officers obtained a warrant to enter and search the residence.

**A. Standard of Review**

"An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be

---

[3] The affidavit in support of the Complaint, [Docket No. 1], states that N.C. reported that Defendant lives at the residence. <u>Id.</u> at 3 ¶ 3.

found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

As alluded to above, the sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)).  "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

B. Analysis

The affidavit in support of the application for the search warrant of the residence in this case contained N.C.'s statements that Defendant was inside the residence with a gun and had both struck and threatened her. (Govt.'s Ex. 2 at 2-3). The affidavit also indicated that Defendant, who had a previous felony conviction, was still inside the residence, the Defendant reported having a gun, and he was making threats against a female who was also still inside the residence. (Id.). Based on the foregoing, Judge Harrington had a substantial basis to conclude that there was a reasonable probability that evidence of a crime could be found in N.C.'s residence.

However, even if the Court were to find that probable cause did not exist to believe that evidence of a crime could be found in N.C.'s residence, the Court concludes that Defendant's motion to suppress evidence gathered as a result of the search of the residence should still be denied under the Leon good faith exception.

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing United States v. Leon, 468 U.S. 897, 922 (1984)). Even if the Court were now to conclude here that the affidavit supporting the search warrant did not set forth facts within its four corners sufficient to demonstrate probable cause to enter and search the residence, on the present record, law enforcement's good-faith reliance on the warrant issued by Judge Harrington militates against suppressing any evidence obtained in the search. See Leon, 468 U.S. at 919-921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained

a search warrant from a judge or magistrate and acted within its scope"). See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

Deputy Fisher's affidavit in support of the application for the search warrant in this case indicates that he presented Judge Harrington with specific facts indicating that Defendant, who had a previous felony conviction, was at the time the application was submitted, inside the residence with a weapon. Accordingly, when executing the search warrant for N.C.'s residence, law enforcement relied in good faith on Judge Harrington's determination that probable cause existed. Because the Court concludes that the entry and search into N.C.'s residence was authorized by the search warrant, or, in any event, the officer's good faith reliance on the warrant, the Court need not address the merits of the Government's argument that the entry was also supported by exigent circumstances.

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Search and Seizure Evidence, [Docket No.18], to the extent the motion pertains to the entry and subsequent search of N.C.'s residence.

2. Prior search and seizure of Defendant's person and automobile.

Defendant also moves the Court to suppress evidence gathered as a result of a stop and search of Defendant's person and automobile that occurred on June 8, 2014, which Defendant

asserts may be potentially relevant evidence under Federal Rule of Evidence 404(b). In its response and at the motion hearing, the Government indicated that it does not intend to offer any evidence of the June 8, 2014, stop at trial either as part of its case-in-chief or as evidence of other crimes under Rule 404(b). Because Defendant's motion seeks to suppress evidence that the Government does not intend to offer, Defendant's motion to suppress is moot to the extent it pertains to evidence of the June 8, 2014, stop.

Based on the foregoing, the Court recommends **DENYING as moot** Defendant's Motion to Suppress Search and Seizure Evidence, [Docket No.18], to the extent the motion pertains to evidence gathered as a result of the June 8, 2014, stop and search of Defendant's person and vehicle.

### IV. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE BY DEFENDANT, [DOCKET NO. 19]

Defendant next moves the Court to suppress all his statements, and evidence derived therefrom, arguing that the statements were the fruits of an unlawful seizure, were coerced and not voluntary, and were obtained in violation of his Miranda rights.[4] In their moving papers, the parties indicate that the present motion is limited to statements Defendant made during the standoff up until the point at which he was arrested.

Defendant contends that the police were required to provide him with the Miranda warnings during the standoff, arguing that the police surrounding N.C.'s residence had restricted his movements to the extent that he was effectively in custody for the purposes of Miranda. The Government disputes whether Defendant was in custody for the purposes of Miranda and argues

---

[4] Although Defendant again frames the motion as including a challenge to the lawfulness of the seizure, which Defendant asserts occurred when the officers surrounded the N.C.'s residence with him inside, Defendant offers no argument that the police, in responding to a complaint that he had threatened someone with a firearm, was in any way unlawful.

that, under the public safety exception, Miranda was not applicable to the statements Defendant made during the standoff.

Assuming for the sake of argument that Defendant was in custody when the officers surrounded N.C.'s house, the Court concludes that the standoff falls within the public safety exception to the Miranda requirement. See New York v. Quarles, 467 U.S. 649, 656-57 (1984) ("We hold that on these facts there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence[.]").

The Supreme Court has explained:

> The Fifth Amendment guarantees that no person ... shall be compelled in any criminal case to be a witness against himself. In Miranda, this Court for the first time extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police. . . . The Miranda decision was based in large part on this Court's view that the warnings which it required police to give to suspects in custody would reduce the likelihood that the suspects would fall victim to constitutionally impermissible practices of police interrogation in the presumptively coercive environment of the station house. . . . We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination.

Quarles, 467 U.S. at 654-57 (internal citations, alterations, and quotation marks omitted).

In Quarles, the Supreme Court considered the case of an individual apprehended by officers in a supermarket. Id. at 652. The officers had been told that the suspect had entered the market carrying a gun that was not on the suspect when he was apprehended. Id. As the officers surrounded and arrested the suspect, they asked him, without first providing the Miranda warnings, to provide them with the location of the gun. Id. The suspect later sought to have his answer suppressed. Id.

The Supreme Court concluded that Miranda did not apply to the questions asked by the officers, reasoning "that the doctrinal underpinnings of Miranda [do not] require that it be

applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." Id. at 656.

An apparent armed standoff like the one in the present case, wherein the statements sought to be suppressed are made by an armed defendant in a standoff with the police who has a hostage he has already threatened, is clearly within the public safety exception to the Miranda requirement. Thus, even assuming for the sake of argument that Defendant's movements had been restricted to the point that he could have been considered to be in custody for the purposes of Miranda, under the circumstances present in this case, Miranda was simply inapplicable to statements Defendant made to the police during the standoff. As such, the Court concludes the officers were not required to provide Defendant with the Miranda warnings during the standoff and Defendant is not entitled to have the statements he made during the standoff suppressed.

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements of Defendant, [Docket No. 19].

IV.   **CONCLUSION**

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress All Electronic Surveillance Evidence, [Docket No. 17], be **DENIED**;

2. Defendant's Motion to Suppress Search and Seizure Evidence, [Docket No. 18], be **DENIED**; and,

3. Defendant's Motion to Suppress Statements of Defendant, [Docket No. 19], be **DENIED**.

Dated: December 22, 2014                                s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 5, 2015** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by January 20, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.